### 7410

### CAPE FEAR LUMBER CO. v. SMALL.

CONTRACTS—SPECIFIC PERFORMANCE.—The party giving an option to pur-
chase timber, held here to have waived all objections that the tender
did not conform to the requirements of the option, except the one
as to the form of the deed, which the buyer, within the time specified
for acceptance, notified him would be changed to conform to his
requests, and specific performance ordered.

Before GAGE, J., Marlboro, Spring term, 1909.    Affirmed.

Action by Cape Fear Lumber Company against Adeline
Small and Tilghman Lumber Company.    From judgment
for plaintiff, defendants appeal on following exceptions:

*Exception I.* "His Honor, the presiding Judge, erred, it
is respectfully submitted, in holding that Mrs. Small was
bound to execute a deed because Cape Fear Lumber Com-
pany had, previous to the expiration of the time limit
named in the option, expressed its intention to pay the pur-
chase price and take deed for the timber in question.    He
should have held that the instrument in writing was a

unilateral agreement, not binding on Cape Fear Lumber Company unless it chose to be bound, and not binding on Mrs. Small unless Cape Fear Lumber Company complied strictly with its terms, and binding upon Mrs. Small only upon the payment or actual tender of the purchase price *before* the expiration of the time limit.

*Exception II.* "Because his Honor erred, it is respectfully submitted, in not holding that it appears by the uncontradicted testimony that the purchase price was neither tendered nor paid, during the time allowed for payment by the terms of the option or at any other time, and, therefore, there was no obligation upon Mrs. Small to execute a deed after the expiration of the option period.

*Exception III.* "Because his Honor erred, it is respectfully submitted, in holding in effect that Mrs. Small is estopped by her conduct from taking advantage of the expiration of the option period; whereas, the entire testimony shows that she did nothing whatever to mislead Cape Fear Lumber Company, but, on the contrary, indicated throughout the transaction that she would insist on a strict compliance.

*Exception IV.* "Because his Honor erred, it is respectfully submitted, in not holding that the agreement on the part of Mrs. Small was unenforcible on the ground that the price was so unreasonable as to be shocking to the conscience, and, in addition, a fraud on her rights, and in further holding that the defendant cannot take advantage of this. He should have held that the defendant cannot take advantage of this. He should have held that the defendant is not asking the aid of a court of equity, and there is no issue between Mrs. Small and Tilghman Lumber Company in this case, and he should have held, further, that a court of equity will not enforce an agreement where it appears conclusively that the value of the thing to be conveyed is so much out of proportion to the price to be paid, as the testimony shows it to have been in this case."

*Messrs. Willcox & Willcox* and *Henry E. Davis* **and** *Newton & Owens,* for appellants.

*Messrs. Willcox & Willcox* and *Henry E. Davis* cite: *Contract here is not a sale and confers no interest in the property:* 24 Am. St. R., 19; 6 Words & Phrases, 5000-1 *et seq.;* 21 Ency., 931; 144 U. S., 394; 167 Fed., 635; Bail. Eq., 371; 30 Am. St. R., 47; 21 L. R. A., 129; 1 War. on Vendors, sec. 125; 24 Am. St. R., 17; 6 Am. St. R., 417. *Vendee must show complete performance:* 56 Fed., 4; 122 Fed., 979; 3 Hill, 268; 5 Rich., 251; 3 Rich., 216; 1 Pet., 465; 1 Bail., 362; 162 U. S., 170, 404; 1 Pet., 464; 164 U. S., 301; 106 U. S., 252; 167 Fed., 280; 21 Ency., 930; 121 Fed., 677; 109 Fed., 280; 3 L. R. A., 94; 30 Am. St. R., 361; 24 Am. St. R., 17; 43 Am. Dec., 640; 44 Am. Dec., 544; Story Eq. Jur., sec. 736; 121 Fed., 577; 10 Wall., 339; 67 L. R. A., 576; 122 Fed., 972. *What is a tender?* 2 Green. Ev., secs. 601-3; 26 S. C., 344; 17 S. C., 329; 3 Strob., 25; 1 N. & McC., 194; 28 Ency., 25; 1 Bail., 362; 3 Hill, 268; 28 Ency., 25. *Specific performance not a matter of right:* 53 S. C., 563; *Marthinson* v. *McCutchen, infra;* 1 DeS., 257; 3 DeS., 272; 25 Strob. Eq., 72; 41 S. C., 349; 2 Pom. Eq. Jur., sec. 860; 1 Hill Ch., 51; 43 Am. St. R., 800; 24 Am. St. R., 864; 33 Am. St., R., 834; 34 Am. St. R., 672.

*Messrs. Newton & Owens* cite: *If contract is not clear, specific performance will not be declared:* 69 S. C., 100; 27 S. C., 380; Pom. on Con., 81; 2 Beach on Mod. Eq., sec. 579; Wat. on Spec. Per., 212; Fry on Spec. Per., 297; 4 Rich. Eq., 307; 2 Story Eq., 91.

*Messrs. M. C. Woods* and *Livingston & Muller,* contra, cite: *Is contract mutual and binding on Mrs. Small?* 69 S. C., 87, 93; 103 U. S., 828; 56 Fed., 1; 93 Ala., 153; 54 Pac., 587; 13 Col., 552; 104 Ga., 157; 169 Ill., 276; 103

Ind., 461; 11 Ia., 161; 55 N. J. Eq., 260; 153 Pa. St., 646; 1 A. & E. Ann. Cas., 990. *How acceptance may be shown:* 36 Col., 395; 21 Ency., 932, 935; 12 A. & E. Ann. Cas., 88; 146 Fed., 8; 150 Fed., 48; 80 N. E., 498; 105 N. Y. App. Div., 287; 68 At., 46; 54 S. E., 33; 85 Pac., 342; 53 S. E., 795. *If there was forfeiture on part of vendee, it was waived by vendor:* 54 S. C., 603; 78 S. C., 433.

January 8, 1910. The opinion of the Court was delivered by

JUDGE ERNEST GARY, *in place of* MR. JUSTICE WOODS, *disqualified.* The nature of this action will appear from the following statement, set out in the record:

"This action was begun in 1899, to require of the defendant, Adeline Small, the specific performance of a contract, given by her to the plaintiff, for the sale of timber on a certain tract of land in Marlboro county; this contract being what is commonly known as a timber option, and to have a certain conveyance made by the defendant, Adeline Small, to the defendant, Tilghman Lumber Company, for the timber in question, declared null and void, and perpetually to enjoin the defendant, Tilghman Lumber Company, from cutting such timber. This option was executed on the 5th day of October, 1898, and it gave to the plaintiff the right or option to purchase all of the pine and poplar timber on the tract of land described therein, within four months thereafter, which would be February 5, 1899. Thereafter, on the 16th day of February, 1899, Mrs. Small sold the same timber to her co-defendant, Tilghman Lumber Company, which claims title thereto by virtue of this deed. The case in due course was referred to John W. LeGrand, Esq., special referee, to take the testimony and report the same to the Court. The referee having complied with this order, the cause came on to be heard before Honorable Geo. W. Gage, presiding Judge, who, after hearing argument, rendered a decree, wherein he held that the option was a valid

and subsisting contract, and should be specifically performed; and, in addition, that the deed under which defendant, Tilghman Lumber Company, claims is void, and should be cancelled."

The allegations of the complaint, material to the questions under consideration, are as follows:

"That the defendant, Adeline Small, being the owner in fee of certain lands hereinafter described, in Marlboro county, in the State of South Carolina, did, on the 5th day of October, A. D. 1898, for a valuable consideration then paid, execute and deliver to the plaintiff a certain writing giving an option to other rights of which the following is a copy, to wit:

" 'State of South Carolina, County of Marlboro.

" 'For and in consideration of one dollar in hand, receipt of which is hereby acknowledged, I hereby give to the Cape Fear Lumber Company, or assigns, the option of purchasing, within four months, all the pine and poplar timber on our lands, for the lump sum of three hundred and seventy-five dollars, the said lands containing seven hundred and fifty acres, more or less, and bounded on the north by Cashuaway Ferry and Lumberton Road and lands of J. P. Hodges          Mrs. Adeline Small. (L. s.)

" 'Witness this October 5, 1898.

" '(Signed) H. N. Hodges,
            S. Mitchell.'

"That on the 14th day of January, 1899, the plaintiff did accept said option in writing, the said acceptance being within the time specified in said writing.

"That the plaintiff duly performed all the conditions of said agreement on its part, and has always been ready and willing, and still is, to fulfill the said agreement.

"That on the 14th day of January, A. D. 1899, the plaintiff forwarded the money, to its attorney in Bennettsville, with which to pay the defendant, Adeline Small. and that soon thereafter, during the month of January, through its

attorney, this plaintiff tendered to the defendant the sum of three hundred and seventy-five dollars, and demanded the performance, on her part, of said agreement, by conveying to the plaintiff the timber on said land, with rights to enter, cut and take away the same, and to construct a railroad on said land, said conveyance to be made in accordance with the aforesaid agreement, but the defendant, Adeline Small, refused to perform her part of said agreement, and still refuses to do so.

"That ever since the day on which the purchase money was so tendered it has been in the hands of plaintiff's attorney, for the purpose of completing said purchase.

"That this plaintiff is now ready to comply with said contract, and asks to be allowed to pay the purchase money into Court."

The defendants appealed upon exceptions, which will be set out in the report of the case.

The first and second exceptions will be considered together.

Tender has been well defined as "an offer by a debtor, or other person, who is under an obligation to pay such debt or to perform such obligation, the actual payment or performance being prevented by the refusal of the creditor, or person entitled to performance, to accept the same." 28 Enc. of Law, 4.

The authorities cited by the appellant's attorneys, in their argument, sustain the general proposition that a party to whom an option is given, to purchase certain interests in land, within a prescribed time, cannot maintain an action for specific performance unless it is shown that he made payment of the purchase money, or that, upon tendering the same, that it was refused by the other party to the contract. The party giving the option may, however, waive the right to insist that the tender did not conform to the requirements of law, and all objections, except those interposed, are waived.

Mr. M. C. Woods, a witness for the plaintiff, testified as follows:

"There was a letter from Mrs. Small to Cape Fear Lumber Company, dated on or about the 14th day of December, 1898. In this letter she wanted to know whether Cape Fear Lumber Company intended to buy her timber under the paper which she had given, or words to that effect. That other parties were applying to her for the purchase of that timber, and she wished to know if they intended to comply with the option, because she did not want to lose the sale of the timber. That was in effect the contents of that letter. Another letter, that was in this package destroyed by fire, was from Cape Fear Lumber Company, or Mr. Arringdale, to Mrs. Adeline Small. stating that they accepted the option and would be ready to comply therewith in a short time. Another letter in this package, from Mr. Arringdale to Mrs. Small, stated that the Cape Fear Lumber Company was now ready to comply with the option, and had sent the matter to Mr. Bouchier to close the trade, and to call on Mr. Bouchier and perfect it. This letter was written along about the latter part of January, 1899. There was a second letter from Mrs. Small, written the latter part of January, 1899, to Cape Fear Lumber Company, or to Mr. Arringdale, in which Mrs. Small stated that she had been to Mr. Bouchier's office, and that he had offered to close the trade with her, and had offered her the money to close the trade, and that she would not accept it because the deed was not written in pursuance of the option, and not according to her instructions. That wherein the option failed to comply with her trade was that she did not have plantation privileges under the option, and that she would not take the money or sign any paper until that privilege was accorded her, or words to that effect. There was in this package that was turned over a letter or telegram, I cannot remember which, to Mrs. Small, that Mr. Bouchier would close the trade, allowing her plantation privileges, and that that would

be all right; that Mr. Kellum would call and see her about it.    This is an abstract of this paper, as well as I can recall; I wish to say, in explanation of this statement, that I had seen these papers a short time before they were burned.    As soon as they were burned I wrote down a memorandum of their contents, as I had recalled them, and from which I have refreshed myself in the last twenty-four hours."

The following letter was introduced in evidence by the defendants:

"Bennettsville, S. C., January 17, 1899.
"Mrs. Adeline Small:

"Dear Madam: I wired the Cape Fear Lumber Company, after seeing you today, that there was a discrepancy of two hundred acres in the option, and the amount mentioned in your deed from J. P. Hodges, and asking for permission to close this trade this evening.    In reply they wired me, 'Will have to see my man who examines timber.'    I have written them tonight what you told me this morning, in regard to your conversation with Mr. Mitchell, and asked that they advise me promptly what to do.    I have prepared the deed and will send to you at Brownsville, where you can have it executed and send up to me, and when the instructions come will close the transaction.

"I write you this so as to prevent your coming by here tomorrow, as I will be unable to turn over the check until they so instruct.

"Yours truly,        (Signed) T. W. Bouchier."

Mrs. Adeline Small, one of the defendants, testified:

"Q. After the receipt of this letter, Mrs. Small, did you receive any further communication from Mr. Bouchier? A. Yes, I did.    He sent a paper there, and note with it, for me to have it fixed up and send it back to him, and also to pay that money on the land, that he could not give me the money until I had all the indebtedness taken off the land. Q. Did you sign the paper?    A. No, sir.    Q. Why not? A. Well, I did not sign it because it was not just like I

442          Lumber Co. *v.* Small.

thought that it ought to be—not like Mr. Mitchell promised me—and then I sent it right back to him and asked him to change it. Mr. Kellum then came down to see me, and I told him I wanted to see Mr. Mitchell because he was the one I had the transaction with. I just told Mr. Mitchell to see Henry, my brother, that he was the one what witnessed, and he would tell him what I wanted; he would remind him of his promise. Q. What did he do? A. He said that it was all that was necessary—'don't give yourself one moment's uneasiness'—and then I did not hear any more from Mr. Bouchier until after the time was up. Q. Mr. Mitchell agreed to have these changes made? A. Yes; he agreed very readily. Q. Do you recall what day it was you received the last deed? A. It was the night of the 7th—the date for the option was out the 5th, and that was the night of the 7th; a colored boy brought it down. Q. Did he bring any money with it? A. No, sir; he did not bring anything. He just wrote me a note to have it fixed up, and have that debt all taken off the land, and send the deed to him and he would send me the money; that was after the time was out."

H. W. Kellum, a witness in behalf of the defendants, testified:

"Q. Please state, in your own way, just what you know about this case, and what occurred between you and Mrs. Adeline Small, one of the defendants? A. I went to Mr. Small's house in company with W. K. Hilliard, who has since died, and asked Mrs. Small if she had signed the deed for her timber, which was then at Mr. Bouchier's office in Bennettsville, S. C. She said that she had not; that she had been there to sign it, and that Mr. Bouchier had offered her the money for the timber, and that she had asked him to hold the matter open for a few days, as the deed did not give her any plantation privileges, and she requested Mr. Bouchier to get the company to allow him to grant her those privileges, and then she would come back and sign the deed.

I told her that those privileges had been granted. She said she would go to Bennettsville on the following Saturday and sign the deed. I cannot give the exact date when I saw her as stated, but it was some time between the expiration of the option which Mrs. Small had given to Cape Fear Lumber Company. Q. Do you know why Mrs. Small did not execute the deed? A. Nothing except the reason she gave me, as stated in my examination in chief,—that is, that she wanted certain privileges reserved in the deed. Q. Are you positive that Mrs. Small stated to you that Mr. Bouchier had offered her the money? A. I am."

The foregoing testimony shows that the only objection which Mrs. Small interposed was that the deed did not provide for the plantation privileges to which she was entitled under the terms of the contract. All other objections were, therefore, waived.

That the plaintiff, before the expiration of the time allowed for accepting the option, notified her of its willingness to provide in the deed for the privileges which she claimed. And that after receiving such notice, and before the option had expired, she stated that she would go to Bennettsville on the following Saturday and sign the deed, but she failed to go. If she had gone, as she promised, there is no doubt she would have received the purchase money, upon the delivery of the deed. Under these circumstances she is not in a position to resist specific performance of her contract.

The third exception is disposed of by what has already been said; and the fourth is overruled for the reasons stated by his Honor, the Circuit Judge.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.