0034

Marilyn Jane MACCARO and Kathleen McGee Maccaro, Respondents, v. ANDRICK DEVELOPMENT CORP., Appellant.

(311 S. E. (2d) 91)

Court of Appeals

*Drew A. Laughlin,* of *Bowen, Cooper, Beard & Smoot,* Hilton Head Island, *for appellant.*

*James B. Richardson, Jr.,* Columbia, *for respondents.*

Jan. 3, 1984.

BELL, Judge:

This is an action for specific performance of a contract for the sale of real estate. The circuit court decreed specific performance in favor of the purchasers, the Maccaros, on condition that they tender a mortgage in the form specified by the court. The seller, Andrick Development Corp., appeals from that decision, claiming the contract was rescinded prior to the commencement of suit. We affirm.

The material facts are undisputed. In September, 1978, Andrick entered a written contract with two sisters, Kathleen and Marilyn Maccaro, to sell a condominium on Hilton Head Island. The agreed purchase price was $49,000.00, to be paid $1,000.00 as earnest money and $3,900.00 at closing. The contract provided:

> The balance of $44,100 to be financed by Seller at 9% simple interest for 30 years in equal monthly installments. Subject to credit approval by lender.

Closing was to be held on December 15, 1978, with time stated to be of the essence.

For reasons attributable to Andrick, closing was postponed several times. In the interval the sisters completed a credit application with Andrick. Their credit was approved as provided in the contract of sale.

In late July, 1979, Andrick tendered closing documents to the sisters and proposed a closing date of August 1, 1979. Among these documents were a promissory note, mortgage, and settlement statement reflecting a sales price of $57,500.00. The mortgage was a standard form FNMA/FHLMC[1] Uniform Instrument containing twenty-three de-

---

[1] Federal National Mortgage Association/Federal Home Loan Mortgage Corporation.

tailed clauses and running to four pages of fine print. Paragraph 17 of the mortgage contained a lengthy "due on sale" clause.

The sisters, upon advice of their father, a retired judge, refused to execute the proposed closing documents. Through their attorney, they insisted Andrick close at the contract price of $49,100.00 and objected to the "due on sale" clause in the mortgage. They did, however, indicate their willingness to execute a mortgage without the clause.

In October, 1979, after unsuccessful negotiations between the attorneys for the parties, the sisters tendered the $3,900.00 due at closing and stated they were "ready, willing and able to execute [a] promissory note in the amount of $44,100.00 with interest at 9% repayable to the seller in equal monthly installments over a period of thirty years." They then made formal demand that Andrick perform the contract according to its terms. A fruitless exchange of correspondence ensued. Finally, Andrick, on December 4, 1979, returned to the sisters' attorney their check for the closing payment and refunded their earnest money, stating:

> Since it is now apparent that your client desires not to comply with the terms of finances reasonably imposed by Andrick Development Corp., to wit: they will not agree to the execution of FNMA mortgage ..., the contract is hereby declared null and void....

The Maccaros' suit for specific performance followed.

## I.

The circuit court ordered specific performance of the contract on condition that the Maccaros deliver a mortgage without a "due on sale" clause. Andrick contends this ruling was erroneous. In its view, the contract of sale bound the Maccaros to comply with all reasonable terms of financing imposed by the seller. According to Andrick, when the Maccaros refused to execute a mortgage with the "due on sale" clause, they breached the contract. As breaching parties, Andrick argues, they are not entitled to specific performance. *Bishop v. Tolbert*, 249 S. C. 289, 153 S. E. (2d) 912 (1967).

To prevail on its theory, Andrick had to show that an express or implied term of the contract bound the Maccaros to

give a mortgage on the seller's terms or with a "due on sale" clause. No express provision of the contract says the Maccaros must furnish a mortgage on terms stipulated by the seller. Nothing in the contract mentions a "due on sale" clause. The contract merely requires Andrick to finance the unpaid balance at closing at 9% simple interest for 30 years. Correspondingly, the Maccaros are obligated to repay the debt in monthly installments at the agreed interest rate over the specified term of years. The parties understood and intended the word "financed" to mean a secured purchase money loan, its ordinary connotation in a real estate transaction of this type. Thus, the Maccaros were obligated to deliver a first mortgage at closing. However, there is no statement as to what terms the mortgage should contain. Had Andrick so chosen, it could have stated in the contract that the mortgage would be in the form prescribed by the lender.

In the absence of an express agreement as to the contents of the mortgage, Andrick had the burden of showing an implied agreement that the mortgage would be on the seller's terms. As a general rule, implied terms are not favored in the law. *Commercial Credit Corp. v. Nelson Motors, Inc.*, 247 S. C. 360, 147 S. E. (2d) 481 (1966). However, neither law nor equity requires every term or condition to be set forth in a contract. Where an implied term is necessary to effectuate the intention of the parties, the law will supply it. *Commercial Credit Corp. v. Nelson Motors, Inc., supra.* The unexpressed provision may be inferred from the language of the contract itself, or by looking to the external facts and circumstances surrounding the bargain, or by proving a general custom and usage of including certain terms as part of similar contracts. *Commercial Credit Corp. v. Nelson Motors, Inc., supra; Burden v. Woodside Cotton Mills*, 104 S. C. 435, 89 S. E. 474 (1916).

In this case, Andrick failed to prove an implied term which would permit it to insist on a "due on sale" clause. There is no language in the contract from which to infer an agreement that the mortgage terms would be those specified by the seller. Andrick's argument that such an agreement is implied by the phrase "subject to credit approval by lender" is not persuasive. That clause simply gave Andrick the right to satisfy itself as to the Maccaros' credit-worthiness before

lending them the purchase money. It had nothing to do with the terms of the mortgage instrument. Moreover, Andrick admitted in its pleadings that the credit of the Maccaros was approved by the lender as provided in the contract. This admission foreclosed it from arguing that the clause imposed further obligations on the Maccaros which they had not met.

As regards evidence extrinsic to the contract, Andrick proved only that it had used the same FNMA/FHLMC Mortgage form in other sales of condominiums. There is nothing in the record showing the form is generally and customarily used in real estate transactions or that the Maccaros were chargeable with knowledge that Andrick normally used it. Likewise there was no proof that a "due on sale" clause was a customary provision in mortgage instruments in use in similar transactions at the time and place the contract was made. Indeed, during oral argument Andrick's counsel disclaimed any reliance on custom and usage to establish an implied agreement regarding a "due on sale" clause.

In the absence of an express or implied agreement regarding inclusion of a "due on sale" clause in the mortgage, the Maccaros' refusal to accept the clause did not constitute a breach of the contract. Thus, Andrick's purported rescission for breach was of no legal effect. The contract was still in force and subject to an action for specific performance.

## II.

As an additional reason for denying specific performance, Andrick argues the Maccaros failed to tender full performance of their part of the bargain. In particular, Andrick emphasizes that the Maccaros tendered the closing payment, but not a mortgage as required by the contract.

The rules of equity concerning the necessity of actual tender are not as stringent as those of the law. *Speed v. Speed*, 213 S. C. 401, 49 S. E. (2d) 588 (1948). It is sufficient if the party seeking specific performance states in his pleading that he is ready, willing, and able to perform his obligations under the contract. *Elliott v. Dew*, 264 S. C. 40, 212 S. E. (2d) 421 (1975); *Jackson v. Rogers*, 111 S. C. 49, 96 S. E. 692 (1918). Moreover, where the contract has been repudiated by the other party or it is clear tender will be refused, the party

seeking specific performance is relieved of the obligation to make tender. *Speed v. Speed, supra; Elliott v. Dew, supra.*

In their complaint, the Maccaros stated that they stand "ready, willing and able to perform their obligations under the contract." In addition, Andrick repudiated the contract prior to institution of the suit for specific performance. It is also clear Andrick would have refused any tender that did not include a mortgage with a "due on sale" clause. Therefore, the Maccaros were under no obligation to make a "perfect" tender before seeking specific performance.

### III.

The final issue raised by Andrick is the failure of the trial court to award it interim interest on the purchase money as a condition of specific performance. Andrick bases its claim for interest on the fact that the Maccaros took possession of the property shortly after the suit commenced. Normally, a purchaser in possession prior to closing is liable for interim interest in the absence of a contrary agreement of the parties. *Administrators of Rutledge v. Executors of Smith,* 6 S. C. Eq. (1 McCord Eq.) 399 (1826).

The issue of interim interest was not raised in Andrick's pleadings and was not passed on by the circuit court. It cannot be raised for the first time in this Court. *Santee Portland Cement Corp. v. Mid-State Redi Mix Concrete Co., Inc.,* 273 S. C. 784, 260 S. E. (2d) 178 (1979). Our decision on this point is without prejudice, however, to any right Andrick may have to claim interim interest in further proceedings before the circuit court.

For the reasons stated, Andrick's exceptions are overruled and the judgment of the circuit court is

Affirmed.

SANDERS, C. J. and GARDNER, J., concur.