## MINNESOTA LUMBER CO. *v.* HOBBS & LIVINGSTON.

1. Defects in a petition, such as may be cured by appropriate amendment, can not properly be made the subject-matter of a motion to dismiss, made at the trial term of a case, but can only be taken advantage of by way of special demurrer to the petition, filed at the appearance term.   A petition capable of withstanding a general demurrer, as was the petition filed in the present case, should not be dismissed on motion made at the trial term.

2. That a plaintiff can not maintain a pending action because of a recovery in a former suit is a defense which must be set up by a special plea, unless the facts on which it is based appear on the face of the petition, and can not be urged by way of a motion to dismiss, predicated on evidence admitted without objection, or on an admission by the plaintiff as to such former recovery.

3. To enter into a contract in behalf of a corporation chartered for the purpose of manufacturing lumber, under which the other party is to haul logs to be sawn into lumber by the company, is within the apparent scope of the authority of its superintendent or other managing official; and in the absence of any limitation on his powers, it is to be presumed that he likewise has authority to act for the company in the matter of determining whether or not it will live up to the terms of the contract or repudiate the same in whole or in part.

4. The best evidence of the contents of a writing is the writing itself, when the contents thereof are sought to be proved; but the writing itself is not the best evidence of what a given individual told another were its contents.

5. Save as to the finding of attorney's fees, the verdict of the jury was warranted by the evidence, and should be upheld if the plaintiff will voluntarily write off the amount recovered as attorney's fees.

*Argued December 16, 1904. —Decided January 30, 1905.*

Action for breach of contract. Before Judge Covington. City court of Moultrie. February 27, 1904.

*W. S. Humphreys, John Murrow,* and *J. A. Humphreys,* for plaintiff in error. *John D. Pope* and *Shipp & Kline,* contra.

Evans, J. The firm of Hobbs & Livingston, in a petition filed in the city court of Moultrie, complained that it had been endamaged by the Minnesota Lumber Company, because of the breach of a contract set forth in the petition. The defendant corporation filed a demurrer, and also a plea denying all substantial averments of the petition. The case was submitted to a jury, who returned a verdict in favor of the plaintiff for $1,820, together with $180 attorney's fees. A motion for a new trial was made by the defendant, but was overruled by the court. Within thirty days of the trial the defendant sued out a bill of exceptions, therein complaining of certain rulings made during the progress of the case, and assigning error on the judgment overruling the motion for a new trial.

1. Upon the call of the case the defendant moved to dismiss the suit, on the ground that no cause of action was set forth in the petition; because the plaintiff failed to allege any steps taken to make the loss of the defendant as little as possible; and because the petition did not allege what the actual loss to the plaintiff was, or what amount of actual profits the plaintiff would have realized in the event the contract had been performed. So far as these special objections to the petition are concerned, the court was clearly right in refusing to sustain the motion to dismiss. If the defendant desired to specially demur to any portion of the plaintiff's petition, a proper special demurrer should have been filed at the appearance term of the case. A motion to dismiss is the equivalent of a general demurrer, and may be made at the trial term if the petition is fatally defective; but such a motion can not reach mere defects in pleading, such as may be cured by appropriate amendment. As against a general demurrer the petition in the present case stated a cause of action, and accordingly the motion to dismiss was properly overruled. The defendant also urged the court to require the plaintiffs to elect "which they would sue for, the profits that they were entitled to on the business under the contract, or for damages sustained on account of the breach" thereof alleged in the petition. The court declined

so to do. If the petition was open to attack on the ground of vagueness or duplicity, the point should have been made by special demurrer filed at the appearance term. The petition set forth a contract and alleged a breach thereof, and a recovery was asked for damages arising from such breach, to be measured, in part, by the loss of profits which the plaintiff had sustained. There was nothing in the petition which justified the defendant in calling on the court to compel the plaintiff to elect between two remedies, or to pursue one course rather than another in making out the case.

2. Before the introduction of any evidence, it was admitted that a suit between the same parties, based on the same contract, for an amount claimed as due upon a part performance thereof by the plaintiff, had been tried at the same term of the court and had resulted in a verdict and judgment for the plaintiff. Upon this admission the defendant moved to dismiss the pending suit, on the ground that the judgment in the former suit was a bar to any subsequent action for any breach of the contract occurring prior to the commencement of such initial suit. The court overruled the motion, and error is assigned on this ruling, both in the bill of exceptions and in the motion for a new trial. There was no plea of former recovery filed by the defendant. The only defense relied on was a general denial of the various paragraphs of the plaintiff's petition. The defendant corporation, if desirous of availing itself of the defense that the contract for a breach of which damages were claimed was an entire and indivisible one and that the former suit was exhaustive of the plaintiff's right to sue, should have filed an appropriate plea specially urging this defense. *Williams* v. *Rawlins*, 33 *Ga.* 117 (10); *Tommey* v. *Finney*, 45 *Ga.* 158; *Central Railroad Co.* v. *Coleman*, 88 *Ga.* 294, and cases cited. As the pleadings stood, the admission was wholly irrelevant to any issue in the case, and afforded no cause for dismissing the plaintiff's action. The pleadings set forth the mutual altercations between the parties, and evidence which neither tends to establish nor disprove any allegation made therein is inadmissible. If irrelevant evidence be admitted without objection, it can have no probative value in the determination of the case, which the court and jury are called on to decide upon the issues raised by the pleadings of the respective parties. It was not the right of the defendant, at the trial term of the case, to interpose

any such defense without making affidavit that "at the time of filing the original plea or answer [the defendant] did not omit the new facts or defense . . for the purpose of delay, and that" such defense was not then "offered for delay," unless, in the discretion of the court, the circumstances of the case or substantial justice between the parties required that the defendant should be permitted to amend without attaching such affidavit. No offer to amend the defendant's answer was made, or affidavit presented, nor was the court called on to exercise any discretion in the premises. The requirements of the act of December 21, 1897, with regard to tardily presenting a new and distinct defense, were wholly disregarded by the defendant, and the court was asked to dispense with proper pleadings, ignore that act (Acts of 1897, p. 35), and dismiss the action on mere motion of the defendant, based on an admission of the plaintiff which the defendant regarded as fatal to a recovery in the pending suit. The question of law involved was not one which could be properly presented by a motion to dismiss the petition, which on its face disclosed nothing of which the defendant could take advantage as matter of defense. *Killen* v. *Compton*, 57 *Ga.* 63 ; *Kennon* v. *Petty*, 59 *Ga.* 175. Accordingly, the court rightly declined to grant the motion to dismiss.

3. The contract alleged by the plaintiff was that the defendant corporation employed the plaintiff to haul logs from a certain lot of land to defendant's tramroad, about a mile and a quarter distant, at $4.50 per thousand feet, the dimension of the logs to be computed by their mean diameter. It was alleged that the contract was to continue of force till the 7th day of April, 1903; and that, after plaintiff had entered upon a performance of the contract, the officers and agents of the defendant corporation notified plaintiff that they would not pay for the hauling of the logs in accordance with the terms of the contract; whereupon plaintiff was forced to suspend operations, and sustained the damages alleged in the petition. The defendant denied entering into any such contract or committing any breach thereof. On the trial one of the members of the plaintiff firm testified that the contract alleged was made by him with two named persons who were the president and superintendent, respectively, of the defendant corporation. Objection was made to this testimony, on the ground

that it did not appear that these officers of the corporation had authority to make in its behalf such a contract. The defendant was a corporation duly chartered and engaged in the business of manufacturing lumber. A necessary incident of the business was to provide the logs which were to be sawn into lumber. In an .enterprise of this character, the superintendent of the corporation has power to contract in behalf of the corporation with reference to matters proper and usual in the ordinary conduct of the corporate business. He may employ labor, contract for the hauling of logs, and do any act relating to the actual operation of the mill. As a general rule, a president has no inherent power to contract for the corporation; and unless his powers are enlarged by the charter or by-laws, his duties are confined to presiding and voting as a director. 2 Cook, Corp. § 716. The contract was alleged to have been made with both the president and the superintendent of the corporation. The plaintiff had the right to assume, in the absence of any limitation in the charter or by-laws, that the superintendent had authority to contract in behalf of the corporation with regard to the carrying on of the business for which it was chartered. What is said above also applies to the contention of the defendant that the court erred in admitting, over a similar objection, evidence to the effect that the person who the witness just referred to had testified was the superintendent of the defendant said to a member of the plaintiff firm that unless he consented to a different basis of measurement than that which had been agreed on, he could take the plaintiff's teams out of the woods. Whether or not this person was the superintendent of the defendant corporation was, under the evidence submitted, a question of fact for the jury. If he was so in fact, then he was acting within the apparent scope of his authority in notifying the plaintiff that the corporation he represented would no longer live up to its agreement with respect to the manner in which the logs were to be measured, and the plaintiff had a right to treat this declaration as a breach of the contract and to act accordingly.

4. In the course of the trial, testimony was admitted tending to show that, pending the negotiations which led up to the making of the contract, the president of the defendant corporation stated that it held a lease covering the land from which he desired the timber cut and hauled, which lease would expire

on April 7, 1903. Objection was made to this testimony, on the ground that the written lease was the highest and best evidence. The plaintiff was not undertaking to prove that there was, in point of fact, a lease, but only to prove that the defendant's president had said there was, and had stated, as a reason for wanting the logs hauled before April 7th, that the lease expired on that date. Nor was it necessary to a recovery by the plaintiff that it be shown that any such lease had ever been executed. The plaintiff did allege and prove that the contract was not to remain of force longer than a given period which expired on April 7th. The best evidence of what the defendant's president stated was his reason for wanting the contract performed by that date was proof of what he said was his reason. The plaintiff proposed to show nothing more. The testimony objected to might have been wholly irrelevant, but it was not inadmissible for the reason assigned by the defendant.

5. No exception is taken to the amount of the verdict, other than a general assignment that the verdict was without evidence to support it. The plaintiff's evidence tended to show that it was to be compensated for hauling the logs at the rate of $4.50 per thousand feet, the logs to be measured in accordance with a certain rule prescribed in Scribner's Lumber and Log Book for ascertaining the mean diameter; that within the contract period the plaintiff could have hauled a certain number of logs, if permitted to do so, which at the contract price would have entitled it to payment of a sum in excess of the amount of damages assessed by the jury; and that, by reason of the defendant's repudiation of the contract, the plaintiff had been endamaged in that sum. We can not, therefore, say that the verdict was without evidence to support it, so far as this item of damages is concerned. The jury included in their verdict $180 as attorney's fees. There was no evidence before them authorizing the recovery of any amount as attorney's fees; so this part of their finding can not be upheld. Accordingly, we have given direction that if, within ten days after the filing of the remittitur in the court below, the plaintiff will voluntarily write off the recovery of attorney's fees, the judgment overruling the motion for a new trial shall stand affirmed; otherwise, a new trial be had.

*Judgment affirmed, on condition. All the Justices concur.*